## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHELLI F. ROGERS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | )     Civil Action No. 6:13-CV-01333-CM-TJJ |
| | ) |
| BANK OF AMERICA, N.A., | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW Plaintiff Shelli F. Rogers, by and through her undersigned counsel, submits this Memorandum in Opposition to Defendant's Motion to Dismiss.

### I.    NATURE OF THE CASE

In 2009, Defendant Bank of America ("Bank of America") held the mortgage on Plaintiff Shelli F. Rogers' ("Ms. Rogers") primary residential home. In the spring of 2009, Ms. Rogers lost her job and contacted Bank of America seeking deferment of her May 2009 mortgage payment. Bank of America told Ms. Rogers she could not get a deferral because she was not in default. She subsequently missed her May and April, 2009 monthly mortgage payments. She sought and obtained new employment almost immediately and contacted Bank of America in June to make arrangements to secure a deferral and catch up her missed payments. At that time, Bank of America told her it already initiated foreclosure proceedings on her home.

In the almost two (2) year period that followed, Ms. Rogers worked endlessly with Bank of America, at its direction, submitting and resubmitting requested documents desperate to obtain a mortgage modification for which Bank of America told her she could apply. This lawsuit stems from the ongoing deceptive and unconscionable acts and practices Bank of America utilized

during that time period to delay and manipulate the modification process to charge interest, penalties, and fees while refusing to accept Ms. Rogers' arrearage payments.

In the end, after twenty-one (21) months, Ms. Rogers was neither accepted nor rejected for loan modification. Instead, with a badly damaged credit report and the never ending stress of wondering if she would be able to keep her home, she was forced into bankruptcy. Ms. Rogers filed this litigation asserting Bank of America, through its deceptive and unconscionable acts and practices, committed numerous and voluminous violations of the Kansas Consumer Protection Act ("KCPA"). In response, Bank of America filed an untimely Motion to Dismiss, arguing that a consumer transaction, as defined by the KCPA, did not exist and that it did not commit any deceptive or unconscionable acts or practices. It further asserts that all violations it may have committed constitute a single transaction and should be treated as a single violation. As an afterthought, Bank of America alleges some of Ms. Rogers' claims are barred by the statute of limitations and Bank of America ignores the fact it actually waived this defense by failing to assert the defense in earlier pleadings or amend its answer in accordance with the scheduling order.

In support of its arguments, Bank of America cites inapposite case law, mischaracterizes Ms. Rogers' claims, asserts legal analysis and conclusions without legal support, and fails to properly follow federal procedure. Taking the facts pled in the Petition as true, Ms. Rogers has a viable KCPA claim against Bank of America and therefore Bank of America's Motion to Dismiss should be denied.

2247817                                2

## II.    QUESTIONS PRESENTED

A.  **Consumer Transaction.** The KCPA defines a consumer transaction as "a sale, lease, assignment or other disposition for value of property or services within this state to a consumer; or a solicitation by a supplier with respect to any of these dispositions." Ms. Rogers had a mortgage with Bank of America and Bank of America solicited Ms. Rogers to modify that mortgage. Did a consumer transaction exist?

B.  **Deceptive and Unconscionable Acts and Practices.** Under the KCPA, suppliers are prohibited from engaging in deceptive and unconscionable acts and practices. Bank of America misled Ms. Rogers when she sought deferral of her mortgage payments, refused to accept Ms. Rogers' monthly mortgage payments, and misrepresented her home was in foreclosure. Bank of America also misrepresented that the only way Ms. Rogers could retain her home was to apply for and receive a mortgage modification. Bank of America used illegal tactics to delay her application for twenty-one (21) months without ever accepting or denying Ms. Rogers' modification request. Has Ms. Rogers pled enough facts to suggest BOA violated the KCPA?

C.  **Damages.** The KCPA allows damages to be awarded to aggrieved parties in an amount up to $10,000 for each KCPA violation occurring before, during, or after a consumer transaction. Bank of America committed numerous violations between June 2009 and March 2011. Is Ms. Rogers entitled to recover damages for each violation?

D.  **Statute of Limitations.** Under the Federal Rules of Civil Procedure 8(c)(1) and 12(b), the statute of limitations is an affirmative defense a defendant must assert in its Answer or pre-Answer Motion. Failure to do so waives the defense. Bank of America never asserted a statute of limitations defense in its Answer or pre-Answer Motion. Did Bank of America waive the statute of limitations defense?

2247817

### III.    STANDARD OF REVIEW

Courts disfavor Motions to Dismiss, and they are granted sparingly and only with great care.[1] In instances where a motion to dismiss concerns the legal sufficiency of a claim, the question must be decided based on the well-pleaded facts of Plaintiff's Petition.[2] The question for determination is whether, in the light most favorable to Plaintiff, and with every doubt resolved in Plaintiff's favor, the Petition sets forth sufficient information to suggest there is a recognized legal theory upon which relief can be granted.[3] Dismissal is justified only when the allegations of the Petition clearly demonstrate Plaintiff does not have a claim.[4]

### IV.    STATEMENT OF RELEVANT FACTS

In this case, the relevant allegations in the Petition that must be taken as true are as follows:

1.    On August 2, 2013, Ms. Rogers filed her Petition in the District Court of Sedgwick County, Kansas. (*See* Petition in the State Court Records, Dkt. # 4).

2.    Bank of America was served August 9, 2013. (*See* Petition in the State Court Records, Dkt. # 4).

3.    On September 9, 2013, Bank of America removed the case to the United States District Court for the District of Kansas. (*See* Notice of Removal, Dkt. # 1).

4.    On September 16, 2013, Bank of America filed its Answer. (*See* Answer to Complaint, Dkt. # 5).

---

[1] *See Halley v. Branabe*, 271 Kan. 652, 656 (2001).
[2] *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010).
[3] *Id.*
[4] *Knight v. Neodesha, Kan., Police Dep't*, 5 Kan.App.2d 472, 475 (1980).

2247817                                           4

5. Shortly after the case was removed, the parties conferred via telephone and, on December 13, 2013, jointly submitted its Report of Parties' Planning Conference. (*See* Report of Parties' Planning Conference, attached as Exhibit # 1).

6. A Scheduling Conference was held with the Court on December 20, 2013 and the Court subsequently prepared the Scheduling Order. (*See* Scheduling Order, Dkt. # 8).

7. The Scheduling Order states any motions to amend **must** be filed by January 31, 2014. (Scheduling Order p. 7 ¶ 3(b), Dkt. # 8).

8. Plaintiff is a fee simple owner of her residential home located at 1001 North Washington, Sedgwick, Kansas. Such real property is Plaintiff's principal residence. (Petition p. 1 ¶ 1).

9. Plaintiff is obligated on a purchase money promissory note secured by a mortgage on the property ("Loan"). (Petition p. 1 ¶ 3).

10. At all material times herein, Defendant's predecessor, BAC Home Loans Servicing, L.P., serviced the Loan until its merger with Defendant. (Petition p. 1 ¶ 4; Answer p. 1 ¶ 4).

11. By virtue of the merger and Defendant's status as successor to BAC Home Loans Servicing, L.P., Defendant is liable for the acts and omissions of BAC Home Loans Servicing, L.P. (Petition p. 2 ¶ 5).

12. In April 2009, Plaintiff lost her job and knew she would be unable to make her next monthly payment due under the Loan. Plaintiff contacted Defendant, explained her situation requesting a payment deferral. Defendant rejected Plaintiff's request stating Plaintiff was currently not in default and therefore she could not set up an arrangement to defer payments at that time. (Petition p. 3 ¶ 10).

13.    In May and June 2009, Plaintiff did not make her monthly payments due under the Loan. (Petition p. 3 ¶ 11; Answer p. 2 ¶ 11).

14.    On June 16, 2009, Defendant sent Plaintiff a written notice of its intent to accelerate, giving Plaintiff until July 16, 2009 to cure the default. (Petition p. 3 ¶ 12).

15.    On June 17, 2009, Defendant sent Plaintiff a written notice of default stating it did not receive Plaintiff's May and June 2009 payments. (Petition p. 3 ¶ 13).

16.    In June 2009, Plaintiff made a monthly payment under the Loan. (Petition p. 3 ¶ 14).

17.    Shortly thereafter, Defendant rejected and returned Plaintiff's payment. (Petition p. 3 ¶ 15).

18.    After realizing Defendant rejected and returned her payment, Plaintiff contacted Defendant about the rejected payment. Defendant told Plaintiff her home was in foreclosure and therefore it would not accept any payments. Defendant informed Plaintiff the foreclosure could be dismissed if she applied for and was approved for a modification. (Petition p. 4 ¶ 16).

19.    In June 2009, Plaintiff sought modification with Defendant. Plaintiff provided Defendant with the information Defendant requested to evaluate Plaintiff's eligibility. (Petition p. 4 ¶ 17; Answer p. 3 ¶ 17).).

20.    With no response from Defendant, Plaintiff contacted Defendant on July 16, 2009to check on the status of her modification application. Defendant informed Plaintiff she was assigned to a new representative, thereby requiring thirty to ninety days to review Plaintiff's modification application. (Petition p. 4 ¶ 18).

21.    With no further response from Defendant, Plaintiff contacted Defendant on September 11, 2009 to check on the status of her modification application. Defendant informed

Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 4 ¶ 19).

22.    Deeply concerned, Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. (Petition p. 4 ¶ 20).

23.    On September 11, 2009, Defendant's local counsel sent Plaintiff written notice of Plaintiff's past due debt. (Petition p. 4 ¶ 21).

24.    On September 16, 2009, Defendant filed a Petition to Foreclosure Plaintiff's Mortgage. The foreclosure was filed three (3) months after Defendant informed Plaintiff Plaintiff's house was in foreclosure. (Petition p. 4 ¶ 22).

25.    With no response from Defendant regarding her modification in almost two months, Plaintiff contacted Defendant on November 4, 2009to check on the status of her modification application. Again, Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 5 ¶ 23).

26.    And again, Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for updated financial information, which Plaintiff already provided on several previous occasions. (Petition p. 5 ¶ 24).

27.    On or about November 24, 2009, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 5 ¶ 25).

28.    Upon receipt of the notice of sale, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to

ninety additional days to review Plaintiff's modification application and to be able to answer her questions about the notice of sale. Defendant also informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 5 ¶ 26).

29.     Desperate to not lose her home, Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for updated financial information and already provided information. (Petition p. 5 ¶ 27).

30.     On December 1, 2009, Defendant sent Plaintiff written notice that it received her information for modification and directed Plaintiff to continue making payments. (Petition p. 5 ¶ 28).

31.     Upon receipt of this written notice, Plaintiff immediately contacted Defendant regarding the note to continue making payments. Defendant informed Plaintiff the letter she received dated December 1, 2009, was a general letter not applicable to her specific situation and Defendant would not accept any payments because her home was in foreclosure. Defendant also informed Plaintiff it would postpone the sale. (Petition p. 5-6 ¶ 29).

32.     On December 10, 2009, Defendant sent Plaintiff a letter stating Defendant was entering into foreclosure proceedings but Plaintiff could stop the proceedings by contacting Defendant. (Petition p. 6 ¶ 30).

33.     On or about December 10, 2009, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 6 ¶ 31).

34.     Upon receipt of the notice of sale on December 14, 2009, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of

2247817                                          8

her home. Defendant informed Plaintiff her representative was not available at that time and her representative would contact Plaintiff. (Petition p. 6 ¶ 32).

35. After not hearing from Defendant as promised, on December 28, 2009, Plaintiff contacted Defendant to again check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff her modification application was waiting for final approval and Plaintiff would receive a notice of acceptance in the mail shortly. (Petition p. 6 ¶ 33).

36. On January 11, 2010, after not receiving any acceptance notice, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. (Petition p. 6 ¶ 34).

37. Concerned her home may be sold, on January 12, 2010, Plaintiff contacted Defendant to check on the status of her home. Defendant informed Plaintiff it would postpone the sale. (Petition p. 6 ¶ 35).

38. On or about January 25, 2010, Defendant filed and sent Plaintiff another written notice of sale. (Petition p. 7 ¶ 36).

39. On January 28, 2010, for the fourth time that month, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff her modification application needed updated financial information and more of the same information Plaintiff already provided. (Petition p. 7 ¶ 37).

2247817

40.    On January 28, 2010, Plaintiff provided Defendant with the information requested to satisfy Defendant's need for updated financial information and already provided information. (Petition p. 7 ¶ 38).

41.    On February 4, 2010, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. Defendant also informed Plaintiff it would postpone the sale. (Petition p. 7 ¶ 39).

42.    On or about February 10, 2010, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 7 ¶ 40).

43.    On February 18, 2010, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff her modification application was not approved and Defendant was looking at other options for Plaintiff. Defendant also informed Plaintiff it would postpone the sale. (Petition p. 7 ¶ 41).

44.    On or about February 26, 2010, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 7 ¶ 42).

45.    Upon receipt of the notice on March 3, 2010, Plaintiff contacted Defendant to check on the status of her account. Defendant informed Plaintiff her account needed updated financial information and information Plaintiff already provided. (Petition p. 8 ¶ 43).

46.    Plaintiff promptly provided Defendant with the information requested to satisfy Defendant's need for updated financial information and already provided information. (Petition p. 8 ¶ 44).

47.     On March 8, 2010, Plaintiff contacted Defendant to check on the status of her account. Defendant informed Plaintiff her account was being reviewed and directed Plaintiff to call back around March 20, 2010 to postpone the sale. (Petition p. 8 ¶ 45).

48.     Again concerned she would lose her home, on March 9, 2010, Plaintiff contacted Defendant to postpone the sale. Defendant informed Plaintiff she could not postpone the sale at that time. (Petition p. 8 ¶ 46).

49.     On March 15, 2010, Plaintiff contacted Defendant to postpone the sale. For the fifth time Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring an additional thirty to ninety days to review her account and determine whether to postpone the sale. (Petition p. 8 ¶ 47).

50.     Despite the fact that a real estate sale was already pending, on or about March 23, 2010, Defendant filed and sent Plaintiff a new written notice of sale. (Petition p. 8 ¶ 48).

51.     On March 25, 2010, Plaintiff contacted Defendant to check on the status of her account. Defendant informed Plaintiff she was being reviewed for modification and was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. (Petition p. 8 ¶ 49).

52.     In early April 2010, Defendant contacted Plaintiff informing her that her account was ready for final approval. (Petition p. 8 ¶ 50).

53.     Despite being told her account was ready for final approval, on or about April 13, 2010, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 9 ¶ 51).

54.     Upon receipt of the notice of sale, Plaintiff immediately contacted Defendant on April 16, 2010, to check on the status of her modification application and to inquire about the sale of her home. Defendant informed Plaintiff she was reassigned for the seventh time to a

different representative, thereby requiring yet another thirty (30) to ninety (90) additional days to review Plaintiff's modification application. Defendant also informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. Defendant also informed Plaintiff it would postpone the sale. (Petition p. 9 ¶ 52).

55.    Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for updated financial information and already provided information. (Petition p. 9 ¶ 53).

56.    On or about May 19, 2010, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 9 ¶ 54).

57.    On June 2, 2010, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. For the seventh time Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 9 ¶ 55).

58.    Not giving up, Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for updated financial information and already provided information. (Petition p. 9 ¶ 56).

59.    As an attempted solution to this never-ending problem, Plaintiff decided to do a short-sale. Plaintiff gathered and completed all sixty-five (65) pages of necessary documentation. On June 10, 2010, Plaintiff provided Defendant with the required documentation. (Petition p. 9 ¶ 57).

60.    Later on in June 2010, Plaintiff contacted Defendant to check on the status of the short-sale. Defendant claimed it did not receive any of the required documentation. (Petition p. 10 ¶ 58).

61.     On July 8, 2010, for the twenty-second time Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. (Petition p. 10 ¶ 59).

62.     On July 15, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff there was no new information at that time. (Petition p. 10 ¶ 60).

63.     On July 28, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. For the eighth time Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 10 ¶ 61).

64.     On August 2, 2010, Plaintiff provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. (Petition p. 10 ¶ 62).

65.     On August 19, 2010, for the twenty-sixth time Plaintiff contacted Defendant to check on the status of her modification application. Despite continuously providing Defendant with requested information, Defendant informed Plaintiff she was not eligible for modification because the homeowner failed to provide updated financial information. (Petition p. 10 ¶ 63).

66.     Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. (Petition p. 10 ¶ 64).

67.    On September 10, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. This was the tenth time Defendant reassigned Plaintiff's account. (Petition p. 11 ¶ 65).

68.    On September 20, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 11 ¶ 66).

69.    For the ninth time, Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. (Petition p. 11 ¶ 67).

70.    On September 30, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff she was reassigned to a different representative, thereby requiring thirty to ninety additional days to review Plaintiff's modification application. (Petition p. 11 ¶ 68).

71.    On October 25, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 11 ¶ 69).

72.    On that same day, Plaintiff provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. (Petition p. 11 ¶ 70).

73.    On October 27, 2010, Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 11 ¶ 71).

74.    For the eleventh time, Plaintiff immediately provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. (Petition p. 12 ¶ 72).

75.    On or about November 15, 2010, Defendant filed and sent Plaintiff a written notice of sale. (Petition p. 12 ¶ 73).

76.    On November 27, 2010, Plaintiff contacted Defendant to check on the status of her modification application and to inquire about the sale of her home. (Petition p. 12 ¶ 74).

77.    On January 4, 2011, for the thirty-third time Plaintiff contacted Defendant to check on the status of her modification application. Defendant informed Plaintiff her modification application needed updated financial information and information Plaintiff already provided. (Petition p. 12 ¶ 75).

78.    Accustomed to this dance, Plaintiff provided Defendant with the information requested to satisfy Defendant's need for already provided information and updated financial information. This was the thirteenth time Plaintiff provided requested information to Defendant. (Petition p. 12 ¶ 76).

79.    On February 28, 2011, Defendant sent Plaintiff a written notice that Plaintiff's loan was in foreclosure. (Petition p. 12 ¶ 77).

80.    Exhausted, on March 30, 2011, Plaintiff filed Chapter 13 Bankruptcy to protect her home. (Petition p. 12 ¶ 78).

## V.   ARGUMENT

As Ms. Rogers requests, in her pending Motion to Strike as Untimely Defendant's Motion to Dismiss, the Court should not consider Bank of America's Motion to Dismiss because Bank of America filed the Motion in violation of the deadline imposed by the Court and outlined in the Scheduling Order.[5] Alternatively, even if the Court entertains Bank of America's Motion to Dismiss, the Court should still deny its Motion because the facts pled in the Petition, taken as true, establishes Bank of America committed deceptive and unconscionable acts and practices against Ms. Rogers throughout the course of the mortgage modification process in violation of the KCPA.

**A. Bank of America's Mortgage with Ms. Rogers and Its Solicitation of Ms. Rogers to Modify the Mortgage is a "Consumer Transaction" Under the KCPA**

The Kansas Consumer Protection Act should be interpreted liberally to promote its policies of protecting consumers from suppliers that commit deceptive and unconscionable acts and practices.[6] The KCPA defines a consumer transaction as "a sale, lease, assignment or other disposition for value of property or services within this state to a consumer; or a solicitation by a supplier with respect to any of these dispositions."[7] Here, as defined under the KCPA, Ms. Rogers is a consumer, Bank of America is a supplier, and Bank of America's mortgage with Ms. Rogers and Bank of America's solicitation of Ms. Rogers to modify the mortgage is a consumer transaction.

---

[5] *See* Motion to Strike, Dkt. # 12 and Memorandum in Support of Motion, Dkt. # 13.
[6] K.S.A. 50-623.
[7] K.S.A. 50-624(c).

First, Bank of America's assertion that the "KCPA does not apply to the servicing of a mortgage loan after its origination" is misplaced. In fact, Kansas courts have found that a consumer transaction includes a mortgage transaction for the entire existence of the mortgage.[8] A mortgage is a disposition for value of property and services, and in this case, it was a disposition to a consumer.

Furthermore, Bank of America's assertion that "the KCPA has never been interpreted to apply to an attempted loan refinance or other activity that occurred during the servicing of a loan" and that the KCPA mostly applies to a "one-time, single-occurrence event" is without merit. Kansas courts have noted that the KCPA was modeled after the Uniform Consumer Sales Practices Act which declares that a deceptive act or practice by a supplier "violates the act whether it occurs before, during, or after the transaction."[9]

In 2012, this Court in *Shane v. CitiMortgage, Inc.* held a consumer transaction exists when a bank solicits a borrower to refinance a mortgage. In *Shane*, the Court denied the defendant bank's motion to dismiss because the facts pled suggested the bank could have committed KCPA violations through the course of that refinance.[10] Given the liberal construction of the KCPA to promote consumer protection, Bank of America's mortgage with Ms. Rogers and Bank of America's solicitation of Ms. Rogers to modify the mortgage is a consumer transaction.

Bank of America improperly relies on *Bowers v. Mortgage Electronic Registration Systems, Inc.* for the proposition that no consumer transaction exists between Ms. Rogers and Bank of America. *Bowers* is factually dissimilar and the court's legal analysis and conclusions

---

[8] *Schneider v. Citibank, NA*, Case No. 13-4094-SAC, 2014 WL 219339, at *8 (D. Kan. Jan 21, 2014) (finding Defendants' grant of a mortgage for the time the mortgage existed from 2007 through 2010, even while Plaintiff was trying to refinance the mortgage, was a consumer transaction); *Stephan v. Brotherhood Bank & Trust Co.*, 8 Kan.App.2d 57, 61 (1982) (A "loan transaction . . . falls within the definition of a 'consumer transaction' and is subject to the provisions of the KCPA").
[9] *E.g. State ex rel. Miller v. Midwest Serv. Bureau of Topeka, Inc.*, 229 Kan. 322, 324 (1981).
[10] *Shane v. CitiMortgage, Inc.*, 11-2689-JAR, 2012 WL 3111730, at *3 (D. Kan. July 31, 2012).

2247817                                              17

are not applicable to this case. The borrowers in *Bowers* contacted the bank seeking to refinance their mortgage.[11] Here, Bank of America solicited Ms. Rogers to modify her mortgage. When the bank in *Bowers* discovered mistakes regarding the proposed new loan it immediately sought to correct those mistakes.[12] Conversely, Bank of America has never taken corrective action to remedy it errors in it communications with Ms. Rogers, the delay in processing her mortgage modification application, or any of the other numerous errors it made in the two (2) years Ms. Rogers tried to get her home out of foreclosure. Bank of America cannot rely on *Bowers*. Taking at all the facts in favor of Ms. Rogers, Bank of America's mortgage with Ms. Rogers and Bank of America's solicitation of Ms. Rogers to modify the mortgage is a consumer transaction.

**B. Ms. Rogers Adequately Stated a Claim for Relief Under the KCPA**

**1. Bank of America Committed Deceptive Acts and Practices Under the KCPA**

The KCPA prohibits suppliers from engaging in deceptive acts and practices. Such prohibition includes making representations, knowingly or with reason to know, that specific services have benefits they do not have, offering services without the intent to sell them, and falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies, or obligations that it does not.[13] To establish the "knowledge" element of a claim, it is sufficient for Plaintiff to prove that the misleading representation was made "knowingly" or "with reason to know."[14] Taking the facts alleged in the Petition as true, Ms. Rogers has established that Bank of America committed numerous deceptive acts and practices in violation of the KCPA.

---

[11] *Bowers v. Mortgage Elec. Registration Sys., Inc.*, 10-4141-JTM, 2012 WL 4747162, at *4 (D. Kan. Oct. 4, 2012)
[12] *Id.* at *12-14.
[13] K.S.A. 50-626(b)(1)(A), (5) and (8).
[14] K.S.A. 50-626(b)(1); *Moore v. Bird Eng'g Co., P.A.*, 273 Kan. 2, 15, 41 P.3d 755, 763 (2002).

In its Motion, Bank of America claims Ms. Rogers did not plead enough facts to prove Bank of America violated the KCPA by inducing her to default on her mortgage. This is a false premise for its dismissal request as it misstates the basis of Ms. Rogers' claim. Ms. Rogers does not assert Bank of America's KCPA violations occurred before she defaulted on her mortgage, or that Bank of America's actions induced her to default on her mortgage. Rather, as the Petition clearly sets forth, it is Bank of America's act of soliciting Ms. Rogers to modify the mortgage and keeping her in a perpetual state of limbo for twenty-one (21) months that forms the basis of her claims against Defendant. Bank of America mischaracterizes Ms. Rogers' argument and ignores the eight (8) pages and over sixty-two (62) paragraphs of facts pled in Ms. Rogers' Petition. These allegations sufficiently show Bank of America committed numerous deceptive acts and practices in violation of the KCPA after it tried to get Ms. Rogers to apply for modification.

Bank of America willfully misrepresented material facts, prolonging and delaying Ms. Rogers' mortgage modification. It caused Ms. Rogers to restart the modification process on no less than thirteen (13) known occasions, and yet it never actually decided whether to accept or deny her application for modification. Ultimately, it forced Ms. Rogers to file for bankruptcy, and left her in a far worse position than if she had not applied for mortgage modification. By wrongfully prolonging delaying Ms. Rogers' modification process, Bank of America made more money on her mortgage through the massive accumulation of fees, penalties and interest. Bank of America's treatment of Ms. Rogers is obviously deceptive and violates the KCPA. The Motion to Dismiss on these grounds should be denied. [15]

---

[15] Courts in other jurisdictions recognize similar claims under consumer protection statutes. In *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 353 - 354 (D. Mass. 2011) the court held a supplier acting under HAMP liable for a Massachusetts Consumer Protection Act claim for the supplier's "deceptive representations about HAMP, including wrongful foreclosures, increased fees, costs incurred to avoid foreclosure, loss of opportunities to

2247817                                                        19

Bank of America also wrongfully asserts that claims under the KCPA sound largely in fraud and therefore require a heightened pleading standard. Again, Bank of America misstates the law. It is true that some Kansas courts have found that KCPA claims sound largely in fraud.[16] However, the case cited by Bank of America, as well as other Kansas cases imposing a heightened pleading standard, specifically involves plaintiffs who assert claims of deceptive trade practices.[17] Ms. Rogers' claims against Bank of America do not involve deceptive trade practices.

Bank of America's attempt to raise Ms. Rogers' KCPA claims to the higher standard of fraud is neither novel nor new to Kansas courts and this tactic consistently is rejected. "[T]here are several significant differences between a statutory KCPA claim and one sounding in common-law fraud."[18] Kansas courts have found that the KCPA does not require a proving of "intent to defraud," a critical element in fraud claims.[19] Kansas courts have found that KCPA claims may be proved by a preponderance of evidence rather than clear and convincing evidence.[20] Ms. Rogers is not held to a heightened pleading standard and Bank of America's Motion to Dismiss on these grounds should be denied.

### 2. Bank of America Committed Unconscionable Acts and Practices Under the KCPA

Whether an act is unconscionable under the KCPA depends upon the individual facts of each case. Whether a specific act is deemed "unconscionable" is left to the "sound discretion of

---

pursue refinancing or loss mitigation strategies, and emotional distress." This court, like courts in other jurisdictions, should recognize Plaintiff's analogous consumer protection claim.

[16] *E.g. Haag v. Dry Basement, Inc.*, 11 Kan.App.2d 649, 650 (1987).

[17] *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) (requiring heightened pleading standard for deceptive trade practices claim under KCPA); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003) (requiring heightened pleading standard for deceptive trade practices claim under KCPA); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995) (requiring heightened pleading standard for deceptive trade practices claim under KCPA).

[18] *Kelly v. VinZant*, 287 Kan. 509, 522 (2008).

[19] *E.g. Haag v. Dry Basement, Inc.*, 11 Kan.App.2d 649, 650 (1987).

the district court, to be determined based on the particular circumstances of each case."[21] The KCPA does not provide a specific or limited definition of "unconscionable acts and practices" but rather provides guidance through a list of seven (7) non-exhaustive examples.[22] The Kansas Supreme Court has identified additional factors to guide courts in determining whether specific acts and practices are unconscionable, including use of misleading statements, absence of a material benefit to a consumer, and an obvious imbalance of power between the supplier and the consumer. In this case, Bank of America made misleading statements upon which Ms. Rogers relied to her detriment. Ms. Rogers never received a material benefit from her dealings with Bank of America and her attempts to refinance. In fact, she was left in a much worse position at the end of the twenty-one (21) month period she tried to work with Defendant. Bank of America also wielded an overall imbalance of power, committing unconscionable acts in the process.

### a. Ms. Rogers Relied on Bank of America's Misleading Statements to her Detriment

In its determination of whether a supplier committed an unconscionable act or practice, the Court must consider whether the supplier knew or had reason to know that "the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."[23]

Ms. Rogers outlines in the Petition numerous acts and practices committed by Bank of America that, when taken as true, establish Ms. Rogers relied on Bank of America's misleading statements. For instance, Bank of America sent Ms. Rogers' payment back to her and told her it would refuse to accept any further payments. As a result, Ms. Rogers' account incurred late fees, accrued interest, attorney fees, and other default type fees. Bank of America misrepresented that

---

[20] *E.g. Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan.App.2d 47, 50 (1995).
[21] *Dodson v. U-Needa Self Storage, LLC*, 32 Kan.App.2d 1213, 1218 (2004).
[22] *See* K.S.A. 50-627.

2247817                                          21

her modification application needed documentation and updated financial information when in fact it had the documentation, thereby purposely delaying Ms. Rogers' modification process. Such misleading statements aggrieved Ms. Rogers as detailed in the asserted facts and Bank of America's treatment of Ms. Rogers was unconscionable.

### b. Ms. Rogers Failed to Receive a Material Benefit from the Transaction

In its determination of whether a supplier committed an unconscionable act or practice, the Court must consider circumstances which the supplier knew or had reason to know that "the consumer was unable to receive a material benefit from the subject of the transaction."[24] The facts accepted as true detail with specificity the unconscionable acts and practices that caused Ms. Rogers to suffer damages. Again, and in brief, Bank of America willfully misrepresented material facts, prolonged and delayed Ms. Rogers' mortgage modification, caused Ms. Rogers to repeatedly restart the modification process, failed to ever modified the mortgage, caused Ms. Rogers to file for bankruptcy, and ultimately left Ms. Rogers in a worse position than if she had not applied for mortgage modification.

Bank of America argues Ms. Rogers benefited from its postponed foreclosure sales and prolonged consideration because Ms. Rogers made no payments on her mortgage yet continued to remain in her home. However, Bank of America ignores the fact that it rejected Ms. Rogers' payment and representatives told her that Bank of America would refuse to accept any further payments. Bank of America overlooks the fact that Ms. Rogers (1) incurred late fees, accrued interest, attorney fees, and other default type fees, (2) lost other opportunities to save her home, (3) expended significant time contacting Bank of America, (4) continuously gathered current financial information and providing supporting documents, (5) endured the stress, anxiety, and

---

[23] K.S.A. 50-627(b)(6).
[24] K.S.A. 50-627(b)(3).

humiliation of not knowing whether she would be approved for modification or would lose her home, (6) suffered a negative impact on her credit score, (7) never received the proper consideration for modification to which she was entitled as a result of the prolonged consideration, and (8) was forced to file bankruptcy. Logically, it follows that Ms. Rogers received no material benefit and, as such, the "purpose and actual effect" of the transaction was unconscionable.

### c.  Bank of America Asserted an Overall Imbalance of Power

The Kansas Supreme Court has identified factors which weigh in favor of finding unconscionability, two of those being: (1) "the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect"; and (2) "an overall imbalance in the obligations and rights imposed by the bargain."[25] Ms. Rogers was aggrieved under these factors as well.

The imbalance between Bank of America's obligations and Ms. Rogers' obligations in getting a modification "deal done" are obvious. Bank of America consistently used its power to deceive or mislead its customers and Ms. Rogers is no exception. Bank of America represented it would properly consider Ms. Rogers permanent mortgage modification but never properly executed the steps necessary to evaluate Ms. Rogers' mortgage modification application. Bank of America attempts to defend its abusive process, hiding behind hallow arguments that certain HAMP legislation shields it from liability for its oppressive acts. What remains is an overall imbalance in the obligations imposed upon the parties to this transaction – the consumer spends endless hours gathering papers, making phone calls, and waiting; the supplier does nothing. This

---

[25] *Tufts v. Newmar Corp.*, 53 F. Supp. 2d. 1171, 1182 (D. Kan. 1999).

"overall imbalance in the obligations and rights" of the parties to this transaction renders the acts of Bank of America unconscionable under the KCPA.[26]

### C. Bank of America Committed Numerous Known Violations Under the KCPA and Ms. Rogers' Is Entitled to Recover Damages for Each Violation

Bank of America asserts without legal support that each deceptive and unconscionable act and practice it committed between June 2009 and March 2011 should be treated as a single transaction. Contrary to Bank of America's assertion, the law is clear that Ms. Rogers is entitled to recover damages for each separate violation Bank of America committed.

Kansas courts have consistently interpreted the KCPA to apply to all violations of the Act whether they occur "before, during, or after the transaction."[27] Additionally, the KCPA specifically entitles an aggrieved party to up to "$10,000 for *each* violation."[28] The KCPA also outlines how to treat continuing violations, thereby rejecting Bank of America's arguments that multiple violations over time should be treated as a single transaction.[29] And, aggrieved parties routinely recover statutory damages for each violation when more than one violation occurred.[30]

Taking the facts pled as true, Bank of America committed numerous known violations. Ms. Rogers relied exclusively on the documentation she maintained accumulated during the course of the modification process when she compiled for her Petition the laundry list of KCPA violation Bank of America during that time frame. She fully anticipates discovery will identify more violations for which she does not have documentation. To allow Bank of America to treat the mishandling of Ms. Rogers' mortgage modification application as a single transaction would

---

[26] *Id.*

[27] K.S.A. 50-627(a); *e.g. Miller v. Midwest Service Bureau of Topeka*, 299 Kan. 322, 324 (1981).

[28] K.S.A. 50-636(a) (emphasis added).

[29] K.S.A. 50-636(d).

[30] *See also Lowe v. Surpas Resource Corp.*, 253 F.Supp.2d 1209, 1231 (2003) (stating aggrieved party may recover damages for each separate violation debt collection agency committed); *Louisburg Bldg. & Development Co., L.L.C. v. Albright*, 45 Kan.App.2d 618, 665 (2011) (appellate court did not disrupt trial court's finding of nine KCPA

be a blow to the KCPA's policy of protecting consumers from deceptive and unconscionable acts and practices.[31] The Court should treat each act as a separate violation and deny Bank of America's Motion to Dismiss.

### D. Bank of America Waived its Statute of Limitations Defense When it Failed to Assert it in its Answer

Bank of America also attempts to toss in a request to dismiss this case based on a statute of limitations defense. Bank of America has not previously raised this defense in its Answer or in a pre-Answer motion and, in fact, this Motion to Dismiss is the first time Bank of America mentions it in any of its filings. Bank of America's failure to plead this affirmative defense, timely file a Motion to Amend its Answer in accordance with the deadline prescribed in the Scheduling Order, or to otherwise assert this affirmative defense, renders the defense waived. The Court should deny Defendant's request for dismissal on this grounds.

Statute of limitations is an affirmative defense the Defendant *must* specifically assert in its Answer or, if applicable, in a pre-Answer Motion; otherwise, it is waived.[32] The statute of limitations defense "bears the hallmarks of our adversarial system of justice" whereby a party waives the defense by failing to act.[33] In adhering to the procedures in the adversarial process, Defendant must raise the statute of limitations defense in its Answer or pre-Answer Motion or forever lose its protection.[34]

When the statute of limitations defense is evident from a cursory reading of the Petition, the defense is waived unless Defendant has a viable justification as to why it failed to timely

---

violations and accordingly awarded $90,000 in statutory damages to homeowner regarding KCPA violations that occurred surrounding construction contract.)

[31] K.S.A. 50-623.

[32] Fed. R. Civ. P. 8(c)(1); Fed. R. Civ. P. 12(b); *see Whitmarsh v. Durastone Co.*, 122 F.Supp. 806, 810 (D.R.I. 1954) (finding defendant waived statute of limitations defense when failed to raise it in answer).

[33] *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006).

[34] *Id.*

2247817                                              25

assert it.[35] Plaintiff filed her Petition in state court on August 2, 2013 and Bank of America was served on August 9, 2013. Bank of America timely removed the matter to federal court filing its Notice of Removal on September 9, 2013. It filed its Answer on September 16, 2013. The parties participated in a scheduling conference in December 2013. Thereafter, the Court entered the Scheduling Order granting the parties until January 31, 2014 to file a motion to amend. Between the date Bank of America was served and Court imposed deadline to amend its pleadings, 175 days passed. Bank of America had ample time to amend its Answer to include a statute of limitations defense .

Furthermore, the Petition provides enough detail to allow Bank of America to assess the applicability of a potential statute of limitations defense. The fifteen (15) page Petition contains eighty-three (83) separately numbered paragraphs with **seventy-two (72)** of those paragraphs outlining the factual basis for Ms. Rogers claims. It provides detail, including days and months, about each of Ms. Rogers' interactions with Bank of America. It restates each time she contacted Bank of America inquiring about the status of her mortgage modification and each time she was told to resubmit her information. It is impossible for Bank of America to argue it did not have sufficient notice to timely assert this defense. Its failure to timely assert a statute of limitations defense is an affirmative waiver.

Furthermore, the Scheduling Order dictates all Motions to Amend must be filed by January 31, 2014.[36] Bank of America made no attempt to amend its Answer or otherwise confer with Plaintiff's counsel on amending its Answer. Rather, Bank of America simply asserted its statute of limitations defense in its Motion to Dismiss. The facts are simple: Bank of America

---

[35] *In re Sinclair*, Case No. 02-40323-13, 02-704, 2004 WL 2192587, at *2 (Aug. 16. 2004 D. Kan.) (finding Defendant waived statute of limitations defense when it failed to show good cause when statute of limitations defense was "readily available to them by a cursory reading of the Complaint.") .
[36] *See* Scheduling Order p. 2, Dkt.# 8.

failed to raises its statute of limitations defense in its Answer and the deadline for amendments. Therefore, Bank of America has waived its statute of limitations defense and the Court should deny its Motion.

## VI.    CONCLUSION

KCPA claims are subject to the general rules of pleading found in Federal Rules of Procedure 8(b), which should give "sufficient notice to enable a defendant to formulate a responsive pleading."[37] Ms. Rogers' Petition provided sufficient notice that enabled Bank of America to formulate its Answer. It also sets forth sufficient facts to allow Ms. Rogers to proceed on her claims. Regardless of its attempts to argue otherwise, Bank of America cannot escape liability for its treatment of Ms. Rogers. Doing so threatens the KCPA's intended purpose—to protect consumers from suppliers who commit deceptive and unconscionable acts and practices. Despite the representation to better Ms. Rogers' financial situation and save her home, Bank of America troubled her instead—using the cloak of mortgage modifications to delay and extract from Ms. Rogers as much money as possible. Such behavior violates the KCPA and Ms. Rogers is entitled to relief.

WHEREFORE, Plaintiff respectfully requests the Court Deny Defendant's Motion to Dismiss and for such other and further relief as the Court deems just and proper.

---

[37] *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1386 (10th Cir. 1980).

DATED: February 18, 2014                   Respectfully submitted,

                                           KLENDA AUSTERMAN LLC


                                            /s/ *Michelle L. Brenwald*
                                           Todd E. Shadid, #16615
                                           Michelle L. Brenwald, #19287
                                           Joslyn M. Kusiak, #25439
                                           301 N. Main St., Ste. 1600
                                           Wichita, KS  67202-4816
                                           Tel:  316-267-0331
                                           Fax:  316-267-0333
                                           tshadid@klendalaw.com
                                           mbrenwald@klendalaw.com
                                           jkusiak@klendalaw.com
                                           *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2014, a true and correct copy of the foregoing document was filed through the CM/ECF system of the United States District Court for the District of Kansas, which is understood to serve copies of the same upon counsel for the parties herein who have entered their appearances in this action and consented to electronic service.


                                           /s/ *Michelle L. Brenwald*
                                           Todd E. Shadid, #16615
                                           Klenda Austerman LLC
                                           301 N. Main St., Ste. 1600
                                           Wichita, KS  67202-4816
                                           Tel:  316-267-0331
                                           Fax:  316-267-0333
                                           tshadid@klendalaw.com
                                           *Attorney for Plaintiff*

2247817                          28